UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KNOWLEDGEPLEX, INC.<br>560 S. Winchester Blvd., Suite 500<br>San Jose, CA 95128<br><br>    Plaintiff,<br><br>v.<br><br>METONYMY, INC. D/B/A PLACEBASE,<br>INC.<br>821 Traction Ave., Suite 103<br>Los Angeles, CA 90013<br><br>    Defendant. | Case No. _____ |

## COMPLAINT

Plaintiff KnowledgePlex, Inc., for its Complaint against Defendant Metonymy, Inc. d/b/a Placebase, Inc., alleges and states as follows:

1. Plaintiff KnowledgePlex, Inc. is a corporation duly organized and existing under the laws of the State of Delaware and has its principal place of business at 560 S. Winchester Blvd., Suite 500, San Jose, CA 95128.

2. Upon information and belief, Defendant Metonymy, Inc. is doing business as Placebase, Inc. (hereafter "Placebase"), and is a corporation organized and existing under the laws of the State of California, with a principal place of business at 821 Traction Ave., Suite 103, Los Angeles, California 90013.

3. This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* as well as for misappropriation of trade secrets and for breach of contract. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as well as pursuant to agreement by the parties.

## GENERAL ALLEGATIONS

5.     KnowledgePlex was launched in 2000 as an initiative by the Fannie Mae Foundation to support the efforts of practitioners, grantors, policy makers, scholars, investors, and others involved in the fields of affordable housing and community development. KnowledgePlex provides these individuals with a complete source for relevant news, reliable information, timely research, and tools for collaboration.

6.     By providing this information through its web site to the housing and community development field, KnowledgePlex is furthering its goal of transforming disadvantaged communities and neighborhoods. It is helping to usher in a new era for these communities by providing information that can drive markets and empower communities and neighborhoods.

7.     In 2004, KnowledgePlex, through its predecessor-in-interest the Fannie Mae Foundation (collectively referred to herein as "KnowledgePlex"), issued a Request for Proposals ("RFP") in which it sought to build on its foundation by developing a new technology platform through an online data system that could provide housing and demographic data about communities, regions, and the nation to serve a variety of users, including policymakers and professionals in the affordable housing and community development industry.

8.     KnowledgePlex envisioned a web-based data system that would become the hub of a national data infrastructure for this industry by enabling users to identify specific areas on a map, at levels ranging from a neighborhood to the entire nation, and obtain that area's relevant housing and community information such as homeownership levels, demographics, and financial information about housing in various formats, including maps, tables, and charts, that are easily understandable for its diverse audience. This audience can then use the information to advance

development and revitalization plans for neighborhoods, make decisions about their own actions, and learn and understand more about particular communities.

9. It was also important to KnowledgePlex that the system be free to all users but function with the level of speed, quality, and reliability common to commercially available software.

10. The project was a pioneering effort. No one had ever created a reliable, fast, user-friendly, free web site that delivered housing and community information based on user-identified geographic locations selected on a national scale. There were no prior designs, roadmaps, or modules available to use. No other geospatial tools existed at the time that could be used to make this vision a reality.

11. KnowledgePlex understood the value of its concept, project, and the software and products that were to be developed by its contractors. From the very beginning, it worked to protect its proprietary system and maintain confidentiality throughout the proposal and development process. It required that all work produced or created by the successful bidder and its agents and subcontractors belong solely to KnowledgePlex.

12. In response to the RFP, Vinq, LLC, together with its subcontractor Placebase, submitted a proposal. This proposal acknowledged that KnowledgePlex would retain all ownership and intellectual property rights in the software developed as part of the project.

13. Other bidders on the project proposed solutions that were slower, not as robust, and/or would not result in products proprietary to KnowledgePlex. After reviewing the proposals submitted as part of the competitive RFP process, KnowledgePlex accepted this proposal. Vinq and Placebase were chosen because their proposal suggested that they could develop a system like KnowledgePlex envisioned.

14. This agreement required Vinq to treat the project as confidential. It further acknowledged that Vinq, and all of its subcontractors, were undertaking this project as a work-made-for-hire and assigned all rights in anything developed under the project to KnowledgePlex. Finally, it acknowledged that the project was confidential. In this way, the proprietary nature of the system to KnowledgePlex was assured: KnowledgePlex would have all rights in the system and others would be incapable of learning about and copying the system.

15. Vinq and Placebase agreed to specific terms, which are memorialized in separate agreements.

16. Under those terms, Placebase agreed that all work produced as part of the project would be owned by KnowledgePlex. Placebase agreed that the work would be treated as a "work for hire" and also assigned all rights that it may have in any work created under the project to KnowledgePlex. Finally, Placebase acknowledged that it had no license to use intellectual property developed as part of this project.

17. KnowledgePlex is a third-party beneficiary of the agreements between Vinq and Placebase.

18. KnowledgePlex, Vinq, and Placebase began working on the project during the summer of 2004.

19. Vinq, Placebase, and KnowledgePlex worked together and freely shared ideas and information to further the development process. During the development effort, KnowledgePlex's vision for DataPlace slowly came together. More than 20 full-time, dedicated individuals and 50 part-time individuals from KnowledgePlex, Vinq, Placebase, and other entities worked together for a total of well over 50,000 billable hours on this project. The labor-intensive project required extensive trial and error to develop the system that KnowledgePlex

envisioned. This was especially true for Placebase's efforts to develop a system for making data geospatially available quickly, easily, and in multiple views. The unique challenges that Placebase encountered in this part of the project required, in total, at least 10 individuals from Placebase who spent a total of over 24,000 hours working on this project. The effort continued for more than three years.

20. While the parties freely shared information within the group, they also worked confidentially to protect and preserve the innovations of the DataPlace system. Because it was anticipated that this system would one day have to stand on its own, outside the largest affordable housing foundation in the country, provisions, security, and code was done behind firewalls and to a large extent through a web site with limited, restricted access.

21. Placebase was responsible for developing a system for coordinating the correct data with the correct geographic area so that when a user enters a particular geographic area, such as a city or zip code, the system displays the correct data about that particular area, the border of that area, containing places surrounding that area, a mapping engine to render the borders and other shapes relevant to real-time requests, real-time feedback to the user on requests for information over the web, a scalable strategy that would deliver near desktop speeds of delivery to the end user of the system despite Internet lags and slow connections, among other works that make up the existing DataPlace system today.

22. The national scope of this project posed unique challenges. While a local system could have been manually modified during development to accommodate specific geographic issues, a national system like DataPlace presented complications and abnormalities that required a new set of heuristics. When these issues were identified during the development process,

Placebase, working with KnowledgePlex, developed solutions for complications through careful planning and trial and error experimentation.

23. As the project progressed and KnowledgePlex added a new data source or a new feature to DataPlace, Placebase had to develop new ways to get that data into the DataPlace platform and new protocols to handle the data coordination for the new features.

24. As a result of Placebase's work during development of DataPlace, it created valuable technology systems and methods to implement KnowledgePlex's vision for DataPlace.

25. DataPlace provides the functionality that KnowledgePlex envisioned. Users are able to gather data about a specific geographic location, and DataPlace has served as a valuable tool throughout the affordable housing and community development industry.

26. KnowledgePlex owns United States Copyright Registration No. TXu 1-570-162 for the code required to operate DataPlace. A copy of the Certificate of Registration is attached hereto as Exhibit A. This copyright gives KnowledgePlex the exclusive right in the United States to reproduce and distribute the DataPlace code.

27. Between May 1, 2007 and August 13, 2007, KnowledgePlex and Placebase attempted to negotiate a new agreement to govern future development of DataPlace, outside of the Vinq contract, but the parties could not reach agreement. PlaceBase refused to continue the then current arrangement under which KnowledgePlex owned all rights in the work of Placebase.

28. When those negotiations failed, Placebase ceased all development work for KnowledgePlex and failed to complete delivery of the DataPlace Project.

29. During the DataPlace project, KnowledgePlex paid more than $3.4 million for Placebase's work on development of DataPlace.

30. During the development process, Placebase developed and was also privy to valuable, confidential information about DataPlace, its functionality, and innovative solutions to problems that were created during its development.

31. Placebase had also been become aware of KnowledgePlex's ideas for future development of DataPlace, including new ideas and features and know-how.

32. Upon information and belief, Placebase began developing a nearly identical product for itself called Pushpin, and another product substantially similar to DataPlace – PolicyMap – for The Reinvestment Fund ("TRF"). Upon information and belief, the work for TRF began earlier this year, even while Placebase was continuing to develop the DataPlace project for KnowledgePlex.

33. Upon information and belief, this new product, like the product that Placebase developed for KnowledgePlex, is a web-based product that delivers information based on geographic data on scales ranging from local neighborhoods to the entire nation.

34. Upon information and belief, Placebase has now delivered the product, having spent less than eight months developing a product that it took Placebase, working together with others, approximately three years to develop as part of the DataPlace product.

35. Upon information and belief, Placebase copied, incorporated, and prepared derivative works of KnowledgePlex's copyrighted code and used and incorporated its confidential, proprietary, and valuable information in providing a substantially similar product with substantially similar functionality as that developed for KnowledgePlex by Placebase.

36. Upon information and belief, Placebase developed this product by improperly using, copying, and misappropriating copyrighted material and confidential, proprietary, and trade secret information owned by KnowledgePlex.

37. Upon information and belief, Placebase has received or will receive payment from The Reinvestment Fund for development of this product.

## COUNT ONE

## COPYRIGHT INFRINGEMENT

38. KnowledgePlex repeats and realleges the averments of paragraphs 1-37 as though fully set forth herein.

39. KnowledgePlex has complied with the copyright laws for the DataPlace code. The Registrar of Copyright has issued to KnowledgePlex a certificate of copyright registration for the DataPlace code.

40. Without KnowledgePlex's authorization, Placebase has copied, performed, created derivate works, and distributed KnowledgePlex's copyrighted material.

41. Placebase's aforesaid acts constitute copyright infringement in violation of the Copyright Laws of the United States, 17 U.S.C. §§ 101 *et seq.*

42. As a result of aforesaid acts by Placebase, KnowledgePlex has been severely injured in its business and property. An award of monetary damages alone cannot fully compensate KnowledgePlex for its injuries. KnowledgePlex lacks an adequate remedy at law.

## COUNT TWO

## BREACH OF CONTRACT

43. KnowledgePlex repeats and realleges the averments of paragraphs 1-42 as though fully set forth herein.

44. A valid, legal, and duly binding contract existed between Vinq and Placebase.

45. This contract was entered into in connection with a project for KnowledgePlex, and KnowledgePlex is a third-party beneficiary of the contract between Vinq and Placebase.

46. KnowledgePlex has performed all of its obligations under the contract, including providing all necessary assistance to Placebase and fully compensating Placebase.

47. Placebase has breached its obligations under the agreement by aforesaid acts.

48. KnowledgePlex has suffered economic losses as a result of Placebase's actions, and KnowledgePlex will be irreparably harmed by Placebase's activities if it continues to breach its obligations under the agreement.

## COUNT THREE

## COMMON LAW TRADE SECRET MISAPPROPRIATION

49. KnowledgePlex repeats and realleges the averments of paragraphs 1-48 as though fully set forth herein.

50. By the aforesaid acts, Placebase has willfully and maliciously misappropriated KnowledgePlex's trade secrets.

51. Unless Placebase is enjoined and restrained by Order of this Court, KnowledgePlex will be irreparably injured by Placebase's activities as set forth above. KnowledgePlex will lose control of its valuable trade secrets because Placebase, and its customers, will be able to use and disclose KnowledgePlex's proprietary information, processes, and methods.

52. KnowledgePlex has no adequate remedy at law.

## COUNT FOUR

## TRADE SECRET MISAPPROPRIATION UNDER D.C. STATUTE

53. KnowledgePlex repeats and realleges the averments of paragraphs 1-52 as though fully set forth herein.

54. By the aforesaid acts, Placebase has willfully and maliciously misappropriated KnowledgePlex's trade secrets in violation of District of Columbia Code §§36-401 *et seq.*

55. Unless Placebase is enjoined and restrained by Order of this Court, KnowledgePlex will be irreparably injured by Placebase's activities as set forth above. KnowledgePlex will lose control of its valuable trade secrets because Placebase, and its customers, will be able to use and disclose KnowledgePlex's proprietary information, processes, and methods.

56. KnowledgePlex has no adequate remedy at law.

## JURY DEMAND

KnowledgePlex demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff KnowledgePlex respectfully requests that this Court enter judgment against Defendant Placebase and prays:

(a) That Placebase, and its officers, agents, representatives, and all persons or entities acting or claiming to act on its behalf or under its direction or authority, and all persons or entities in active concert or participation with it, be preliminarily and permanently enjoined and restrained from infringing KnowledgePlex's copyright material in any manner, and from producing, distributing, disseminating, and selling any materials containing or using KnowledgePlex's copyright materials;

(b) That Placebase, and its officers, agents, representatives, and all persons or entities acting or claiming to act on its behalf or under its direction or authority, and all persons or entities in active concert or participation with it, be preliminarily and permanently enjoined and restrained from disclosing or utilizing any confidential, proprietary, or trade secret information of KnowledgePlex and unfairly competing with KnowledgePlex;

(c) That Placebase be ordered to immediately destroy all copies of KnowledgePlex's confidential, proprietary, and trade secret information in its possession;

(d) That Placebase be ordered to retrieve, within seven (7) calendar days, all copies of KnowledgePlex's confidential, proprietary, and trade secret information provided to any third-party and destroy said information within five (5) business days of receipt;

(e) That Placebase be ordered to provide written notice, in a form approved by this Court, to all third-parties subject to section (d) of Placebase's obligations under this Order

(f) That Placebase be ordered to complete delivery of the DataPlace Project for KnowledgePlex pursuant to the terms of the Agreement within fourteen (14) days of said Order;

(g) That Placebase be required to account for all of its profits from the sale of infringing copies and be ordered to pay such profits to KnowledgePlex, and award KnowledgePlex its actual damages;

(h) That KnowledgePlex be granted an award of statutory damages as specified in the Copyright Act, 17 U.S.C § 504;

(i) That KnowledgePlex be awarded all damages that it has sustained;

(j) That KnowledgePlex be awarded all costs, attorneys' fees, and other expenses that it has been forced to incur; and

(k) Any and all such additional relief that the Court may deem just and proper.

| | |
|---|---|
| Dated this 21st day of December, 2007 | Respectfully submitted, |

                                                  **KNOWLEDGEPLEX, INC.**

/s/ B. Coleman
_____
Brian A. Coleman (Bar No. 459201)
Brian.Coleman@dbr.com
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, D.C. 20005-1209
Tel: (202) 842-8800
Fax: (202) 842-8465

Richard W. Young (*pro hac* pending)
Richard.Young@dbr.com
David J. Moorhead (*pro hac* pending)
David.Moorhead@dbr.com
DRINKER BIDDLE & REATH LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3460

*Attorneys for Plaintiff*

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
KnowledgePlex, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Brian A. Coleman (D.C. Bar No. 459201)
Drinker Biddle & Reath LLP
1500 K Street, N.W.
Washington, D.C. 20005-1209
(202) 842-8800

## DEFENDANTS
Metonymy, Inc., d/b/a Placebase, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. *Antitrust*
☐ 410 Antitrust

### ○ B. *Personal Injury/Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ● E. *General Civil (Other)* OR ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☒ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

|  |  |  |  |
|---|---|---|---|
| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☒ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Claims for copyright infringement under 17 U.S.C. 101 et seq., trade secret misappropriation, and breach of contract.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in compl;  JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE December 21, 2007   SIGNATURE OF ATTORNEY OF RECORD  /s/

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**TXu 1-570-162**

**Effective date of registration:**

December 14, 2007

## Title
**Title of Work:** DataPlace

## Completion/Publication
**Year of Completion:** 2007

## Author
- **Author:** Fannie Mae Foundation
- **Author Created:** Computer program
- **Work made for hire:** Yes
- **Anonymous:** No   **Pseudonymous:** No

## Copyright claimant
**Copyright Claimant:** KnowledgePlex, Inc
560 S. Winchester Blvd., Suite 500, San Jose, CA, 95128
**Transfer Statement:** assignment of all rights

## Limitation of copyright claim
**Previously registered:** No

## Certification
**Name:** KnowledgePlex, Inc., by Troy Anderson
**Date:** December 13, 2007