IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KNOWLEDGEPLEX, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**METONYMY, INC. d/b/a PLACEBASE**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action No.** 1:07-CV-02315-RMU<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**METONYMY, INC. D/B/A PLACEBASE'S REPLY
IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER RULE 11**

Placebase's Motion for Sanctions directly challenged the adequacy of KPI's pre-filing investigation. Placebase's Motion demonstrated how KPI had no basis in fact or law for its allegations regarding jurisdiction or venue; how KPI's defective copyright registration does not cover the source code for DataPlace; how KPI's other allegations are contradicted by KPI's own admissions. In its opposition, KPI tacitly admits to these defects, because it fails to provide *any* description of its pre-filing investigation. KPI's Response also fails to respond to Placebase's detailed demonstration of how KPI's contentions have no legal support. KPI's failure to respond to Placebase's arguments is a concession that Placebase's motion is well-founded. *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) (Urbina, J.) (holding that "if the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case"); *Glenn v. Williams*, No. 98-1278, 2006 U.S. Dist. LEXIS 8687, at *39-40 (D.D.C.

Feb. 21, 2006) (the Court concluding that a party's argument is meritorious based on a failure of the other party to specifically respond to the argument).

I.      KPI'S EVER-CHANGING STORY

KPI's Response is the third court filing describing its claims against Placebase. Each time, KPI has changed its story. Perhaps because it knows that its assertions are so inconsistent, KPI argues that the present motion is not the appropriate time for disputing the facts underlying the present suit. (Knowledgeplex's Memorandum in Opposition to Metonymy's Motion for Sanctions Under Rule 11 ("KPI's Rule 11 Response"), at 1.) In the rest of the brief, however, KPI argues the very facts that it says are ill-timed, but even then, it cannot keep its story straight. For example, in the Complaint, KPI alleged that Placebase's pre-existing Pushpin product was "nearly identical" to DataPlace (Complaint ¶ 32), but dropped its allegations against Pushpin in its Opposition to Dismiss. (Knowledgeplex's Memorandum in Opposition to Metonymy's Motion to Dismiss.) In KPI's Rule 11 Response, KPI now calls Pushpin a "translation" of DataPlace (KPI's Rule 11 Response, at 18), even though Pushpin was released long before DataPlace ever existed. (Memorandum In Support of Defendant's Motion for Sanctions Under Rule 11 ("Placebase's Rule 11 Motion"), at 7, 29.)

II.     ARGUMENT

Rule 11 explicitly requires that a party make a reasonable inquiry prior to signing any pleading. Fed. R. Civ. Pro. 11(b); *Guitierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998). This reasonable inquiry is to establish that each legal contention in the pleading is supported by law and that every factual contention has evidentiary support. If Rule 11 is to have any meaning, it is to provide legal consequence in a situation where, as here, a party asserts legal and factual contentions without support in a way that is misleading to the Court. KPI does not deny the core

2

of Placebase's showing. Nor does KPI dispute that Placebase has been unduly burdened by having to respond to KPI's improper claims and by having to correct KPI's inaccuracies for the Court. Sanctions against KPI and its counsel are appropriate.

### A. KPI'S RESPONSE ESTABLISHES THAT KPI HAS NO SUPPORT FOR ITS LEGAL CONTENTIONS

#### 1. KPI Improperly Brought this Action in D.C.

KPI does not respond to Placebase's showing that KPI filed the present suit in the District of Columbia without a legal basis to support its choice in forum. For the reasons explained in Placebase's Motion to Dismiss, this Court does not have personal jurisdiction over Placebase, and the venue is improper. In asserting venue, KPI not only misrepresented that there is a contract between KPI and Placebase (Complaint at ¶ 4 (stating "Venue is proper . . . pursuant to agreement by the parties.")), but also it failed to inform this Court of the forum selection clause found in the contract that KPI acknowledges forms the basis of this suit. (Placebase's Rule 11 Motion, at 31; Knowledgeplex's Memorandum in Opposition to Metonymy's Motion to Dismiss, Ex. 1: Vinq-Placebase Subcontract at § 21.) The relevant forum selection clause states that "[a]ll disputes relating to or arising out of this Agreement shall be resolved in a state or federal court located in Santa Clara, California." (Knowledgeplex's Memorandum in Opposition to Metonymy's Motion to Dismiss, Ex. 1: Vinq-Placebase Subcontract at § 21.) Further, both of the parties to this litigation are located in California, and all of the activities underlying the suit occurred in California. KPI has no basis for asserting that jurisdiction or venue in this Court is proper.

In its Rule 11 Response, KPI did not—because it cannot—refute Placebase's showing that jurisdiction and venue was unsupported by law or fact. Nor does KPI address the forum

selection clause in the Vinq-Placebase Subcontract. In fact, despite recognizing that Placebase's Motion for Sanctions was again challenging jurisdiction and venue in the present action, (KPI Rule 11 Response, at 1), KPI provided *absolutely no defense* to its improper jurisdictional and venue allegations in the Complaint. Sanctions are appropriate against KPI for its unsubstantiated allegation in the Complaint that this Court is a proper venue. *Method Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 928 (7th Cir. 2004) (affirming a district court's imposition of sanctions against a party that made false venue allegations); *Freeman v. Bianco*, No. 02 Civ. 7525, 2003 WL 179777, *5 (S.D.N.Y. Jan. 24, 2003) (granting sanctions over plaintiff for ignoring forum selection clause).

### 2. KPI's Claim of Common Law Trade Secret Misappropriation Has No Legal Basis

In its Complaint, KPI pled trade secret misappropriation under both common law and the D.C. Uniform Trade Secret Act based on a common set of facts. (Complaint ¶¶ 50, 54.) Placebase moved to dismiss the common law trade secret claims because, *inter alia*, the claim was preempted by the statutory-based claim. In responding to Placebase's Motion to Dismiss, KPI argued that they had a legal basis for the common law misappropriation claim, citing *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 83-84 (D.D.C. 2007). In its Rule 11 Response, KPI has admitted that this District Court in *DSMC* found common law trade secret misappropriation claims preempted by the D.C. Uniform Trade Secret Act, and KPI is now arguing for a reversal of that decision. (KPI's Rule 11 Response, at 19.)

Thus, KPI brought its common law misappropriation claim without having a legal basis. Only now has KPI admitted that controlling precedent is completely contradictory to its position. Had KPI performed an adequate investigation of its claims prior to initiating this suit, it would have revealed that its common law trade secret misappropriation claim was unsupported by law,

4

and it could have prevented Placebase's wasted resources in responding to unsupported allegations.

      **B.    KPI'S RESPONSE ESTABLISHES THAT KPI FAILED TO CONDUCT AN ADEQUATE INVESTIGATION TO SUPPORT ITS FACTUAL CONTENTIONS**

           **1.    KPI's Copyright Registration is Not the Code for DataPlace**

KPI's Complaint states that its claim for copyright infringement is based on its U.S. Copyright Registration No. TXu 1-570-162. (Complaint ¶ 26.) KPI represented to this Court as it did to the Copyright Office, that this registration covers "the code required to operate DataPlace." (Complaint ¶ 26.) Had KPI performed an adequate investigation prior to filing this suit, it would have found, as Placebase has, that its registered deposit consists of forty-two pages of source code, with only twenty-six unique pages. (Placebase's Motion to Dismiss, Ex. A.) Although KPI admits that it cannot maintain its claims of copyright infringement based on its twenty-six pages of copyrighted computer code, KPI refuses to withdraw its claim or revise its factual contentions to this court that its registration covers "the code required to operate DataPlace." (Complaint ¶ 26.) Rather, KPI has called the Copyright Office's official document evidencing its registration a "mystery," itself admitting that it needed to investigate what KPI had registered for copyright protection. (KPI's Opposition to Dismiss, at 13.) *That investigation should have occurred prior to filing suit.*

KPI's Rule 11 Response provides no explanation as to why the Copyright Office's official registration, of which this court should take judicial notice under Federal Rule of Evidence 201, contains only twenty-six unique pages. Nor has KPI provided a legal justification to maintain its copyright infringement claim in light of the fact that KPI certified to both this Court and the Copyright Office that the deposit constituted "the code required to operate

5

DataPlace." (Complaint ¶ 26.) Placebase should not have to continue contesting such baseless and unjustified claims.[1]

### 2. KPI Has No Evidence of Placebase Utilizing KPI's Intellectual Property

KPI's Rule 11 Response presents another misleading and factually unsupportable statement in the headline "KPI Learned that Placebase Copied Its Code." (KPI's Rule 11 Response, at 12.) Not only does the text under the headline provide absolutely no support for the contention that Placebase copied KPI's code,[2] the true facts, which KPI would have known had it conducted an adequate investigation, belie this statement.

As explained in detail in Placebase's Rule 11 Motion, Placebase has on numerous occasions—both before and after this lawsuit was initiated—attempted to show KPI that its PolicyMap system is not the same as any of the work Placebase performed on DataPlace. (Placebase's Rule 11 Motion, at 28-29.) KPI has admitted that it did not compare the publicly available source code for PolicyMap before filing suit. (Placebase's Rule 11 Motion, at 28-29.) Moreover, KPI has provided absolutely no evidence that either KPI's Pushpin or PolicyMap products are "substantially similar" or "nearly identical" as KPI alleges, despite Placebase's

---

[1]   In its Motion for Sanctions, Placebase noted several other errors with KPI's copyright claim, including that KPI's copyright registration improperly states that the material has never been published. (Placebase's Rule 11 Motion, at 30-31.) In a self-serving declaration, Troy Anderson disputes these errors, stating "[the code] has never been published. It is not publicly available." (Declaration of Troy Anderson, at¶ 23.) This is yet another example of KPI's inaccurate statements, because portions of the DataPlace code are and have been available to every user who visits the website: http://www.neighborhoodinfodc.org/beta/.

[2]   KPI points only to circumstantial evidence to support this very serious allegation, relying on the time that it took Placebase to create DataPlace versus PolicyMap. (KPI's Rule 11 Response, at 12.) Like so many of its factual contentions, KPI presents the circumstances in an inaccurate and misleading manner. As explained in Placebase's Rule 11 Motion, Placebase had performed much of the work for DataPlace by the end of 2004, with alpha and beta releases of DataPlace launching in November and December 2004. (Placebase's Rule 11 Motion, at 13.) Moreover, unlike the Perl-based DataPlace, PolicyMap was created on Placebase's pre-existing Pushpin Java components. Placebase's work on Pushpin has been ongoing since 2003.

repeated requests for such evidence. (Placebase's Rule 11 Motion, at 28-29 and documents cited therein.) KPI has failed to establish that it made a reasonable inquiry before making these false allegations.

KPI's Rule 11 Response attempts to confuse the issue by stating that Placebase's Pushpin and PolicyMap systems are merely translations of the DataPlace code. (KPI's Rule 11 Response, at 18). In fact, KPI's Response blatantly misrepresents Placebase's position by asserting that Placebase said Pushpin was a translation of DataPlace. (KPI's Rule 11 Response, at 18). KPI's blatantly false statement is outrageous. Placebase has never made such a statement.[3]

KPI has no evidence, because none exists, that Placebase has improperly utilized any intellectual property belonging to KPI. Yet KPI continues to present unsupported allegations against Placebase. KPI's baseless claims and mischaracterizations of the truth warrant sanctions.

### C. KPI'S REQUEST FOR SANCTIONS AGAINST DEFENDANT IS PREPOSTEROUS

In a last ditch effort, KPI's Rule 11 Response asserts that sanctions are justified under Rule 11 against Placebase and its counsel for the filing of Placebase's Rule 11 Motion. To the extent that any response is warranted by KPI's plea, it should be noted that this request itself does not comply with Rule 11. Specifically, KPI provided no advance warning to Placebase that it would request sanctions based on Placebase's filing. *See* Fed. R. Civ. P. 11(c)(2) (requiring a notification and 21-day response period before requesting sanctions before the court).[4]

---

[3] KPI may be attempting to analogize the DataPlace and PolicyMap codes, but they are completely different. There is no way to merely "translate" something written in the scripting Perl language into compiled Java code.

[4] In contrast, Placebase fully complied with Rule 11 and used its best efforts to persuade KPI to correct the offending filings without resort to court intervention. On April 4, 2008, Placebase's counsel sent KPI's counsel a complete version of the Rule 11 brief that it subsequently filed. (Placebase's Rule 11 Motion, Brothers Dec. ¶ 39.) On April 23, KPI counsel responded to Placebase counsel that they had reviewed the draft brief, but that KPI would not be

7

Placebase's Rule 11 Motion shows KPI's multiple violations of Rule 11 infractions and establishes that the Motion was filed for proper purposes.

### III.     CONCLUSION

KPI filed the present lawsuit without conducting a reasonable inquiry, which would have revealed that many of its legal and factual contentions are unsupported.  Accordingly, KPI's Complaint should be dismissed with prejudice, and KPI and its counsel should be ordered to pay Placebase's costs and legal fees in defending this action.

Dated:  May 20, 2008                                             Respectfully submitted,

/s/ Kenneth W. Brothers
Kenneth W. Brothers (D.C. Bar No. 441113)
Megan S. Woodworth (D.C. Bar No. 488775)
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, D.C.  20006
(202) 420-2200

*Attorneys for Metonymy, Inc. d/b/a Placebase*

---

taking the corrective action sought by Placebase.  (Placebase's Rule 11 Motion, Brothers Dec. ¶ 40.)  Placebase counsel again reached out to KPI counsel on April 28, 2008, but KPI counsel merely stated that KPI opposed the motion.  (Placebase's Rule 11 Motion, Brothers Dec. ¶ 41.)