**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KNOWLEDGEPLEX, INC.<br><br>Plaintiff,<br><br>v.<br><br>METONYMY, INC. D/B/A PLACEBASE, INC.<br><br>Defendant. | Civil Action No. 1:07-CV-02315-RMU<br><br>Hon. Ricardo M. Urbina |

**KNOWLEDGEPLEX'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO METONYMY'S MOTION TO DISMISS**

Plaintiff KnowledgePlex (KPI) submits this supplemental memorandum in opposition to Placebase's motion to dismiss to provide the Court with additional information that it promised to gather relating to the deposit for the copyright registration asserted in this litigation. KPI's investigation confirms that the deposit was proper and that the copyright registration is valid and enforceable.

In moving to dismiss KPI's copyright claim, Placebase argued that this Court lacked subject matter jurisdiction because KPI's copyright registration covered only part (the first 25 pages) of the DataPlace code. Placebase attached as an exhibit to its motion to dismiss 42 pages that it identified as a certified copy of the deposit for the copyright registration. Placebase argued that KPI's claim should be dismissed because "KPI's registration is limited to the source code it deposited with the Copyright Office." *Placebase Mem. in Support*, [Dkt. # 9] at 17. KPI argued in its opposition brief that KPI would still have a valid claim for copyright infringement if the registration covered only the 25 original pages submitted to the Copyright Office, *KPI Opp.*, [Dkt. # 11], at 14, but KPI also committed to determine why the deposit Placebase received was

not the first and last 25 pages of the DataPlace code and to advise the Court. KPI now updates the Court.

As KPI explained in its opposition brief, a clerical error during the submission of KPI's copyright application on Friday, December 14, 2007 caused the first 25 pages of code to be submitted to the Copyright Office twice instead of the first and last 25 pages. When KPI's counsel discovered the problem on the following Monday, December 17, they contacted the Copyright Office and submitted the correct deposit that same day as instructed by the Copyright Office. Four days after the correct deposit was submitted, the Copyright Office issued the Certificate of Registration, and KPI filed suit that day. *Declaration of David J. Moorhead*, [Dkt. # 11-4], ¶¶ 4-8 and Exs. B-D; *Complaint*, Ex. A.

Therefore, when Placebase claimed that the Copyright Office provided it with only 42 pages of KPI's deposit, KPI immediately began investigating. KPI's investigation revealed that despite its prompt actions on December 17 to correct the deposit, the Copyright Office did not correct the deposit. Thus, although KPI submitted the correct deposit to the Copyright Office – just as the Copyright Office directed – and reasonably believed that the registered copyright for which a certificate was issued four days later was based on the corrected deposit, the deposit was never actually corrected. The Copyright Office has nevertheless confirmed that U.S. Copyright Registration TXu 1-570-162 is a valid registration covering the first 25 pages of the DataPlace code. *May 7, 2008 Letter from Nanette Petruzzelli, Associate Register, U.S. Copyright Office, to Janet Fries*, at 3 (attached hereto as **Exhibit A**). Thus, KPI has a proper claim of copyright

infringement subject to this Court's jurisdiction even if limited to the deposited 25 pages of code.[1]

Having learned that the Copyright Office did not correct the duplicate submission of 25 pages, KPI has in the interim registered its copyright for the balance of the DataPlace code. This new registration, U.S. Copyright Registration TXu 1-578-402, which was received from the Copyright Office on August 1, 2008, covers the entire code for DataPlace, except the first 25 pages which are the subject of the original copyright registration. Accordingly, KPI now possesses registrations that together fully cover all of the DataPlace code that is the subject of this litigation. KPI will amend its Complaint to add the new registration to its copyright infringement claim.

Placebase's Motion to Dismiss never had any merit on any claim. KPI's original claim of copyright infringement remains valid. Because KPI has a valid copyright registration and asserted that Placebase copied original and protectable aspects of that copyrighted work, KPI has properly stated a claim for copyright infringement. *Prunte v. Univ. Music Group*, 484 F. Supp.2d 32, 38 (D.D.C. 2007); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The Motion to Dismiss should be denied.

August 12, 2008                                  Respectfully submitted,

                                                                 **KNOWLEDGEPLEX, INC.**

                                                                     */s/ Richard W. Young*
                                                                 Brian A. Coleman (Bar No. 459201)
                                                                 Brian.Coleman@dbr.com
                                                                 DRINKER BIDDLE & REATH LLP
                                                                 1500 K Street, N.W.
                                                                 Washington, D.C. 20005-1209
                                                                 Tel: (202) 842-8800

---

[1] The Copyright Office was unable to explain to KPI's counsel why it provided Placebase with only 42 pages of the copyright deposit. It confirmed that the deposit in the Copyright Office for Copyright Registration TXu 1-570-162 is 50 pages – the first 25 pages submitted twice. *See* Ex. A (*Petruzzelli Ltr.*) at 2.

        Fax: (202) 842-8465

        Richard W. Young (admitted *pro hac*)
        Richard.Young@dbr.com
        David J. Moorhead (admitted *pro hac*)
        David.Moorhead@dbr.com
        DRINKER BIDDLE & REATH LLP
        191 N. Wacker Drive, Suite 3700
        Chicago, IL  60606-1698
        Tel: (312) 569-1000
        Fax: (312) 569-3460

        *Counsel for Plaintiff KnowledgePlex, Inc.*

**PROOF OF SERVICE**

The undersigned attorney certifies that on 12 August 2008, a copy of the following was served via ECF:

- *KnowledgePlex's Supplemental Memorandum in Opposition to Metonymy's Motion to Dismiss*

on the following counsel for Defendant Metonymy, Inc. d/b/a Placebase, Inc.:

Kenneth W. Brothers
Dickstein Shapiro LLP
1825 Eye Street NW
Washington, DC 20006-5403

                                              */s/ Richard W. Young*
                                Counsel for Plaintiff KnowledgePlex, Inc.

                                Brian A. Coleman (Bar No. 459201)
                                Brian.Coleman@dbr.com
                                DRINKER BIDDLE & REATH LLP
                                1500 K Street, N.W.
                                Washington, D.C.  20005-1209
                                Tel: (202) 842-8800
                                Fax: (202) 842-8465

                                Richard W. Young (admitted *pro hac*)
                                Richard.Young@dbr.com
                                David J. Moorhead (admitted *pro hac*)
                                David.Moorhead@dbr.com
                                DRINKER BIDDLE & REATH LLP
                                191 N. Wacker Drive, Suite 3700
                                Chicago, IL  60606-1698
                                Tel: (312) 569-1000
                                Fax: (312) 569-3460

CH01/ 25202760.4

# EXHIBIT A

COPYRIGHT
OFFICE

May 7, 2008



Ms. Janet Fries, Esq.
Drinker Biddle and Reath, LLP
1500 K St., N.W.
Suite 1100
Washington, D.C. 20005-1209

Dear Ms. Fries:

LIBRARY  I have looked into your request to "correct" the deposit materials that were used to
OF  register the computer program *DataPlace*, authored by the Fannie Mae Foundation and in which
CONGRESS the copyright claimant of record is KnowledgePlex, Inc., by assignment of all rights.

Registration problem
You have stated in your 4/10/2008 email to me that on December 14, 2007, you had submitted a claim for registration accompanied by a request for expedited handling. You have said that you called the public office on December 17, 2007, to explain that you had submitted an incorrect deposit and, having spoken to Mr. David Fernandez-Barrial, you sent an email with an attachment of the correct computer program deposit material. You subsequently found that the
Washington registration that has been made, Txu 1-570-162, was completed with deposit material consisting
D.C. of the original, incorrect material consisting of two copies of the first 25 printed pages of the
20559-6000  source code. You have asked that the Office accept a substitution of the last 25 printed pages in place of the duplicate pages appearing in the original deposit copy.

Although you have said that on December 17, 2007, you sent by email the required 25 pages of computer code to add to the original deposit, I point out that it is not the policy of the Copyright Office to advise applicants to email deposit materials to the Office where the applicant has made an error in what he originally sent. We receive more than ½ million registration deposits each fiscal year and it is not possible for either our public office staff or our registration staff to take on the responsibility of verifying the correctness of emailed deposits sent for correction purposes after the fact of a completed registration.

Mr. David Fernandez-Barrial, the supervisory information specialist whom you said you spoke to on December 17, 2007, concerning your request to send a substitute for the correct 25 print pages of source code, does not recall such a conversation concerning the work entitled *DataPlace*. He was, however, concerned about your follow-up email received in the public office on 2/26/2008 and he phoned you on or about February 27, 2008, to clarify the matter. During that phone conversation, you again confirmed that you had sent to CopyInfo the correct deposit pages via email at the direction of the Copyright Office. The Office has followed up on your statement and searched CopyInfo archive. We have found one, unrelated indication of correspondence to you concerning an error in the registration record for another title but we have

found nothing in the archive concerning the claim at issue here, *DataPlace*. Although you have sent me via email a copy of your 12/17/2007 email addressed to CopyInfo, we have not been able to trace such an email within our records, including any attached deposit materials.

In following up on this issue, our public office staff also retrieved from storage the original deposit which had been used for this registration and found that a total of 50 pages were present within the deposit copy and that the 50 pages, in fact, represented two copies of the same 25 pages of redacted source code. You have said that you still wish to send the Copyright Office the missing 25 pages in order to have on record a deposit copy which meets the current deposit requirements for computer program found in our regulations at 37 Code of Federal Regulations 202.20(c)(vii).

It would have been to your benefit had you followed up on your December 17, 2007, email and its attachment of the missing portion of the deposit material, given the unusualness of your request. Had you contacted the Office again, a public office information specialist or a registration specialist would have explained that the Copyright Office cannot, once a registration has been completed, accept an emailed deposit meant to replace an incorrect deposit and would have explained that the required portion of the deposit still had to be brought to the Office by delivery or sent by special or by postal mail in order for a correct registration to take place.

<u>Solution within Office registration practices</u>
We point out the following concerning registration. Registration for a given work produces a permanent registration record. This record consists not only of the particular data record within the entire catalog of data records for all works registered, but it also consists of the materials deposited with the Office which accompany the information supplied on the application form. Such deposits are an integral part of the registration record and represent the authorship for which a claim to copyright is being made. In order for the public to know the extent of the authorship covered by a registration, both the record describing the authorship and ownership and the deposit copy containing the actual authorship must be retained by the Copyright Office and remain unchanged. This is the principle underlying the unwillingness of the Office to accept, post-registration, any substitution for deposit materials.

<u>Compendium of Copyright Office Practices, Compendium II</u>, (1984), §803, states that the copyright law authorizes the Register to "specify by regulation the quantity and content of the material to be deposited." Copyright Office regulations often lessen deposit requirements [one copy instead of two copies of a published work] or require identifying material rather than the entire content of a work. This is the case for computer programs such as *DataPlace* where the deposit materials required for registration consist of one copy of the first 25 pages of the source code of the program and one copy of the last 25 pages of the source code. The purpose of the examining activity within registration is to determine whether the material submitted constitutes copyrightable subject matter and whether all other legal and formal requirements of the copyright statute have been met. 17 U.S.C. §410(a). With respect to software, the code submitted for registration purposes, usually a smaller quantity of code than that which makes up the program as a whole, was originally meant to ease the burden of applying for registration: computer programs may often consist of thousands of lines of code, making it difficult for the applicant to print out

such code in order to allow the Copyright Office registration specialist to examine the code and decide if there is sufficient authorship to sustain a claim.

As I mentioned above, we have recalled the deposit material submitted for this work, *DataPlace*, and have found that the deposit consists of two copies of the same 25 pages of redacted source code. We point out that the registration specialist handling this claim would have looked at the deposit copy to determine whether it basically met the current requirements. The required total of 50 pages were present and, having to review only several printed pages of the deposit, the specialist would have seen sufficient computer code authorship to sustain a claim to registration. The specialist was not required to look at each printed page in order to determine whether it was, indeed, a one-of-a-kind copy of that page's content, i.e., whether any of the 50 total pages was a repeat of itself. When we refer to the source code which must be visible in deposit material for the registration of a computer program, the registration specialist is trained to look for content and for a quantity of that content which fairly approaches that required in the regulation. Our examining activity does not include a precise counting of content; nor does it include a close inspection of whether any of the print pages of computer code present within the deposit is a repeat of itself.

Because we have, post-registration, discovered that the deposit materials are not the first and last 25 pages but, rather, the first 25 pages of redacted code, copied twice, we cannot, as custodians of public records upon which claimants and courts rely for accuracy, replace any portion of the originally submitted copy. This responsibility with respect to registration records is derived from the statute itself, 17 U.S.C. §705(a), which requires that the Copyright Office ensure that records of deposits, registrations, and recordations are maintained. Substitutions of content in deposit materials, post-registration, would make orderly maintenance of reliable and traceable registration records difficult.

You may, indeed, have attached the required amount of code to an email dated December 17, 2007, but we cannot thus far locate such an email and our normal practice would have been not to accept a substitute deposit in this manner: our long-standing practices mean that the public office would not have agreed to accept a deposit submission made as an email attachment.

Concerning Txu 1-570-162, registration protection extends to all copyrightable authorship found within the particular deposit material, although incomplete, used for that registration and which is owned by the claimant of record in that work, KnowledgePlex, Inc. Because we did not have the correct deposit for a computer program, we can register a second claim for this computer program, *DataPlace*. We would need submission of the necessary application form, correct deposit materials, and appropriate fee. Should a second registration be sought, the effective date for that registration would be the date on which all required elements are received. Please note that for such a registration, information concerning the previous registration and the "additional" authorship which did not appear within the already registered deposit copy used in Txu 1-570-162 must be given.

      We are sorry that we cannot do anything further concerning your request. We consider this a final agency action in the matter.

Sincerely,

*n. Petruzzelli*

Nanette Petruzzelli
Associate Register
Registration & Recordation Program
United States Copyright Office