UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KNOWLEDGEPLEX, INC.
560 S. Winchester Blvd., Suite 500
San Jose, CA 95128

      Plaintiff,

v.

PLACEBASE, INC. A/K/A METONYMY, INC.
821 Traction Ave., Suite 103
Los Angeles, CA 90013

      Defendant.

Case No. 1:07-CV-02315-RMU

Hon. Ricardo M. Urbina

## AMENDED COMPLAINT

Plaintiff KnowledgePlex, Inc., for its Amended Complaint against Defendant Metonymy, Inc. d/b/a Placebase, Inc., alleges and states as follows:

1. Plaintiff KnowledgePlex, Inc. is a corporation duly organized and existing under the laws of the State of Delaware and has its principal place of business at 560 S. Winchester Blvd., Suite 500, San Jose, California 95128.

2. Upon information and belief, Defendant Metonymy, Inc. is doing business as Placebase, Inc. (hereafter "Placebase"), and is a corporation organized and existing under the laws of the State of California, with a principal place of business at 821 Traction Ave., Suite 103, Los Angeles, California 90013.

3. This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* as well as for misappropriation of trade secrets and for breach of contract. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

4.   Placebase consented to jurisdiction in the District of Columbia and is subject to jurisdiction under the District of Columbia Long-Arm Statute, D.C. Code § 13-423.

5.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400 as well as pursuant to agreement by the parties.

## GENERAL ALLEGATIONS

6.   KnowledgePlex was launched in 2000 as an initiative by the Fannie Mae Foundation to support the efforts of practitioners, grantors, policy makers, scholars, investors, and others involved in the fields of affordable housing and community development. KnowledgePlex provides these individuals with a complete source for relevant news, reliable information, timely research, and tools for collaboration.

7.   By providing this information through its web site to the housing and community development field, KnowledgePlex is furthering its goal of transforming disadvantaged communities and neighborhoods. It is helping to usher in a new era for these communities by providing information that can drive markets and empower communities and neighborhoods.

8.   In 2004, KnowledgePlex, through its predecessor-in-interest the Fannie Mae Foundation (collectively referred to herein as "KnowledgePlex"), issued a Request for Proposals ("RFP") in which it sought to build on its foundation by developing a new technology platform through an online data system that could provide housing and demographic data about communities, regions, and the nation to serve a variety of users, including policymakers and professionals in the affordable housing and community development industry.

9.   KnowledgePlex envisioned a web-based data system that would become the hub of a national data infrastructure for this industry by enabling users to identify specific areas on a map, at levels ranging from a neighborhood to the entire nation, and obtain that area's relevant housing and community information such as homeownership levels, demographics, and financial

information about housing in various formats, including maps, tables, and charts, that are easily understandable for its diverse audience. This audience can then use the information to advance development and revitalization plans for neighborhoods, make decisions about their own actions, and learn and understand more about particular communities.

10. It was also important to KnowledgePlex that the system be free to all users but function with the level of speed, quality, and reliability common to commercially available software.

11. The development project was a pioneering effort. No one had ever created a reliable, fast, user-friendly, free web site that delivered housing and community information based on user-identified geographic locations selected on a national scale. There were no prior designs, roadmaps, or modules available to use. No other geospatial tools existed at the time that could be used to make this vision a reality.

12. KnowledgePlex understood the value of its concept, project, and the software and products that were to be developed by its contractors. From the very beginning, it worked to protect its proprietary system and maintain confidentiality throughout the proposal and development process. It required that all work produced or created by the successful bidder and its agents and subcontractors belong solely to KnowledgePlex.

13. In response to the RFP, Vinq, LLC, together with its subcontractor Placebase, submitted a proposal. This proposal acknowledged that KnowledgePlex would retain all ownership and intellectual property rights in the software developed as part of the project.

14. Other bidders on the project proposed solutions that were slower, not as robust, and/or would not result in products proprietary to KnowledgePlex. After reviewing the proposals submitted as part of the competitive RFP process, KnowledgePlex accepted the

Vinq/Placebase proposal. Vinq and Placebase were chosen because their proposal suggested that they could develop a system like KnowledgePlex envisioned.

15. KnowledgePlex and Vinq executed the prime contract. With narrow, limited exceptions, that agreement required that the software developed by Vinq for KnowledgePlex be original. The agreement further acknowledged that Vinq, and all of its subcontractors, were undertaking this project as a work-made-for-hire and assigned all rights in anything developed under the project to KnowledgePlex. It also required Vinq to treat KnowledgePlex's confidential or proprietary information as confidential. In this way, the proprietary nature of KnowledgePlex's system was assured: KnowledgePlex would have all rights in the system and others would be incapable of learning about and copying it.

16. Vinq and Placebase agreed to specific terms, which are memorialized separately. The subcontract incorporated the applicable provisions of the prime contract, which was attached to the subcontract.

17. Under those terms, Placebase agreed that all work produced as part of the project would be originally developed for and owned by KnowledgePlex. Placebase agreed that the work would be treated as a "work for hire" and also assigned all of its rights in the work to KnowledgePlex. Finally, Placebase acknowledged that it had no license to use intellectual property developed as part of the project.

18. KnowledgePlex is a third-party beneficiary of the agreement between Vinq and Placebase.

19. KnowledgePlex, Vinq, and Placebase began working on the project during the summer of 2004.

20. Vinq, Placebase, and KnowledgePlex worked together and freely shared ideas and information to further the development process. During the development effort, KnowledgePlex's vision for DataPlace slowly came together. More than 20 full-time, dedicated individuals and 50 part-time individuals from KnowledgePlex, Vinq, Placebase, and other entities worked together for a total of well over 50,000 billable hours on this project. The labor-intensive project required extensive trial and error to develop the system that KnowledgePlex envisioned. This was especially true for Placebase's efforts to develop a system for making data geospatially available quickly, easily, and in multiple views. The unique challenges that Placebase encountered in this part of the project required, in total, at least 10 individuals from Placebase who spent a total of over 24,000 hours working on this project. The effort continued for more than three years.

21. While the parties freely shared information within the group, they also worked confidentially to protect and preserve the innovations of the DataPlace system. Because it was anticipated that this system would one day have to stand on its own, outside the largest affordable housing foundation in the country, the code was written and the system was tested behind firewalls and to a large extent through a web site with limited, restricted access.

22. Placebase was responsible for developing a system for coordinating the correct data with the correct geographic area. When a user enters a particular geographic area, such as a city or zip code, the system displays the correct data about that particular area, the border of that area, and the places surrounding that area. The system also includes a mapping engine to render the borders and other shapes relevant to real-time requests and to provide real-time feedback to the user on requests for information over the web through a scalable strategy that would deliver

near desktop delivery speeds to the end user of the system despite Internet lags and slow connections. This system, among other works, makes up the DataPlace today.

23.     The national scope of this project posed unique challenges. While a local system could have been manually modified during development to accommodate specific geographic issues, a national system like DataPlace presented complications and abnormalities that required a new set of heuristics. When these issues were identified during the development process, Placebase, working with KnowledgePlex, developed solutions to overcome those complications and abnormalities through careful planning and trial and error experimentation.

24.     As the project progressed and KnowledgePlex added a new data source or a new feature to DataPlace, Placebase had to develop new ways to get that data into the DataPlace platform and new protocols to handle the data coordination for the new features.

25.     As a result of Placebase's work during development of DataPlace, it created valuable technology systems and methods to implement KnowledgePlex's vision for DataPlace.

26.     DataPlace provides the functionality that KnowledgePlex envisioned. Users are able to gather data about a specific geographic location, and DataPlace has served as a valuable tool throughout the affordable housing and community development industry.

27.     KnowledgePlex owns United States Copyright Registration Nos. TXu 1-570-162 and TXu 1-578-402 for the code required to operate DataPlace. Copies of the Certificates of Registration are attached hereto as Exhibits A and B. These copyrights give KnowledgePlex the exclusive right in the United States to reproduce and distribute the DataPlace code.

28.     Between May 1, 2007 and August 13, 2007, KnowledgePlex and Placebase attempted to negotiate a new agreement to govern future development of DataPlace, outside of

the Vinq contract, but the parties could not reach agreement. PlaceBase refused to continue the then current arrangement under which KnowledgePlex owned all rights in the work of Placebase.

29. When those negotiations failed, Placebase ceased all development work for KnowledgePlex and failed to complete delivery of its part of DataPlace.

30. During the project, KnowledgePlex paid more than $3.4 million for Placebase's work on development of DataPlace.

31. During the development process, Placebase developed and was also privy to valuable, confidential information about DataPlace, its functionality, and innovative solutions to problems that were overcome during its development.

32. Placebase had also become aware of KnowledgePlex's ideas for future development of DataPlace, including new ideas, features, and know-how.

33. Upon information and belief, Placebase began developing a nearly identical product for itself called Pushpin, and another product substantially similar to DataPlace – PolicyMap – for The Reinvestment Fund ("TRF"). Upon information and belief, the work for TRF began in early 2007, even while Placebase was continuing to develop the DataPlace project for KnowledgePlex.

34. Upon information and belief, this new product, like the product that Placebase developed for KnowledgePlex, is web-based and delivers information based on geographic data on scales ranging from local neighborhoods to the entire nation.

35. Upon information and belief, Placebase developed and delivered to TRF in less than eight months a product that it took Placebase, working together with others, approximately three years to develop as part of DataPlace.

36. Upon information and belief, Placebase copied, incorporated, and prepared derivative works of KnowledgePlex's copyrighted code and used and incorporated its confidential, proprietary, and valuable information to develop and provide to TRF a software product that is substantially similar to DataPlace with substantially similar functionality.

37. Upon information and belief, Placebase developed this product by improperly using, copying, and misappropriating copyrighted material and confidential, proprietary, and trade secret information owned by KnowledgePlex.

38. Upon information and belief, Placebase has received or will receive payment from TRF for development of this product.

## COUNT ONE

## COPYRIGHT INFRINGEMENT

39. KnowledgePlex repeats and realleges the averments of paragraphs 1-38 as though fully set forth herein.

40. KnowledgePlex has complied with the copyright laws for the DataPlace code. The Registrar of Copyright has issued to KnowledgePlex certificates of copyright registration for the DataPlace code.

41. Without KnowledgePlex's authorization, Placebase has copied, performed, created derivate works of, and distributed KnowledgePlex's copyrighted works and infringing copies of those works.

42. Placebase's aforesaid acts constitute copyright infringement in violation of the Copyright Laws of the United States, 17 U.S.C. §§ 101 *et seq.*

43.     As a result of aforesaid acts by Placebase, KnowledgePlex has been severely injured in its business and property. An award of monetary damages alone cannot fully compensate KnowledgePlex for its injuries. KnowledgePlex lacks an adequate remedy at law.

## COUNT TWO

## BREACH OF CONTRACT

44.     KnowledgePlex repeats and realleges the averments of paragraphs 1-43 as though fully set forth herein.

45.     A valid, legal, and duly binding contract existed between KnowledgePlex and Vinq and between Vinq and Placebase. The subcontract between Vinq and Placebase incorporated the applicable provisions of the prime contract

46.     These contracts were entered into in connection with a project for KnowledgePlex, Placebase agreed to be bound by and comply with terms in the prime contract, and KnowledgePlex is an intended third-party beneficiary of the subcontract between Vinq and Placebase.

47.     KnowledgePlex has performed all of its contractual obligations, including providing all necessary assistance to Placebase and fully compensating Placebase.

48.     Placebase has breached its contractual obligations by the aforesaid acts.

49.     KnowledgePlex has suffered economic losses as a result of Placebase's actions, and KnowledgePlex will be irreparably harmed by Placebase's activities if Placebase continues to breach its obligations under the agreement.

## COUNT THREE

## TRADE SECRET MISAPPROPRIATION UNDER D.C. STATUTE

50. KnowledgePlex repeats and realleges the averments of paragraphs 1-49 as though fully set forth herein.

51. The code required to operate DataPlace and all of the design and development work of the project to create the code are protectable trade secrets of KnowledgePlex because they have independent value from being confidential and are not readily ascertainable by proper means, and because they are the subject of reasonable efforts to maintain their secrecy.

52. By the aforesaid acts, Placebase has willfully and maliciously misappropriated KnowledgePlex's trade secrets in violation of District of Columbia Code §§36-401 *et seq.*

53. Unless Placebase is enjoined and restrained by Order of this Court, KnowledgePlex will be irreparably injured by Placebase's activities as set forth above. KnowledgePlex will lose control of its valuable trade secrets because Placebase, and its customers, will be able to use and disclose KnowledgePlex's proprietary information, processes, and methods.

54. KnowledgePlex has no adequate remedy at law.

## JURY DEMAND

KnowledgePlex demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff KnowledgePlex respectfully requests that this Court enter judgment against Defendant Placebase and prays:

(a) That Placebase, and its officers, agents, representatives, and all persons or entities acting or claiming to act on its behalf or under its direction or authority, and all persons or entities in active concert or participation with Placebase who receive notice by personal service

or otherwise, be preliminarily and permanently enjoined and restrained from infringing KnowledgePlex's copyright in any manner, and from producing, distributing, disseminating, displaying, using, and selling any materials containing or using KnowledgePlex's copyrighted works;

(b) That Placebase, and its officers, agents, representatives, and all persons or entities acting or claiming to act on its behalf or under its direction or authority, and all persons or entities in active concert or participation with Placebase who receive notice by personal service or otherwise, be preliminarily and permanently enjoined and restrained from disclosing or utilizing any confidential, proprietary, or trade secret information of KnowledgePlex and unfairly competing with KnowledgePlex;

(c) That persons or entities in active concert or participation with Placebase for purposes of paragraphs (a) and (b) hereof includes all persons or entities who are loading, copying, displaying, performing, using, or distributing the infringing software code.

(d) That Placebase and all persons and entities enjoined pursuant to paragraph (a) or (b) hereof be ordered to immediately destroy all copies of KnowledgePlex's confidential, proprietary, and trade secret information in their possession;

(e) That Placebase be ordered to retrieve, within seven (7) calendar days, all infringing copies of KnowledgePlex's copyrighted works and confidential, proprietary, and trade secret information provided to any third-party and destroy said information within two (2) business days of receipt;

(f) That Placebase be ordered to provide written notice, in a form approved by this Court, to all third-parties subject to any of sections (a) through (e) of their and Placebase's obligations under this Order

(g) That Placebase be ordered to complete delivery of the DataPlace Project for KnowledgePlex pursuant to the terms of the Agreement within fourteen (14) calendar days of said Order;

(h) That Placebase be required to account for all of its profits from the sale of infringing copies and be ordered to pay such profits to KnowledgePlex, and award KnowledgePlex its actual damages;

(i) That KnowledgePlex be granted an award of statutory damages as specified in the Copyright Act, 17 U.S.C § 504;

(j) That KnowledgePlex be awarded all damages that it has sustained;

(k) That KnowledgePlex be awarded all costs, attorneys' fees, and other expenses that it has been forced to incur; and

(l) Any and all such additional relief that the Court may deem just and proper.

Dated this 13th day of August, 2008

Respectfully submitted,

KNOWLEDGEPLEX, INC.

Brian A. Coleman (Bar No. 459201)
Brian.Coleman@dbr.com
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, D.C. 20005-1209
Tel: (202) 842-8800
Fax: (202) 842-8465

Richard W. Young (admitted *pro hac*)
Richard.Young@dbr.com
David J. Moorhead (admitted *pro hac*)
David.Moorhead@dbr.com
DRINKER BIDDLE & REATH LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3460
*Attorneys for Plaintiff*

## PROOF OF SERVICE

The undersigned attorney certifies that on 13 August 2008, a copy of the following was served via U.S. Mail:

- *KnowledgePlex's Amended Complaint*

on the following counsel for Defendant Metonymy, Inc. d/b/a Placebase, Inc.:

Kenneth W. Brothers
Dickstein Shapiro LLP
1825 Eye Street NW
Washington, DC 20006-5403

Counsel for Plaintiff KnowledgePlex, Inc.

Brian A. Coleman (Bar No. 459201)
Brian.Coleman@dbr.com
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, D.C. 20005-1209
Tel: (202) 842-8800
Fax: (202) 842-8465

Richard W. Young (admitted *pro hac*)
Richard.Young@dbr.com
David J. Moorhead (admitted *pro hac*)
David.Moorhead@dbr.com
DRINKER BIDDLE & REATH LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3460

CH01/ 25202665.2

*KnowledgePlex, Inc. v. Placebase, Inc. a/k/a Metonymy, Inc.*, D.D.C. 1:07-CV-02315-RMU

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**TXu 1-570-162**

**Effective date of registration:**

December 14, 2007

## Title
**Title of Work:** DataPlace

## Completion/Publication
**Year of Completion:** 2007

## Author
- **Author:** Fannie Mae Foundation
- **Author Created:** Computer program
- **Work made for hire:** Yes
- **Anonymous:** No           **Pseudonymous:** No

## Copyright claimant
**Copyright Claimant:** KnowledgePlex, Inc
560 S. Winchester Blvd., Suite 500, San Jose, CA, 95128
**Transfer Statement:** assignment of all rights

## Limitation of copyright claim
**Previously registered:** No

## Certification
**Name:** KnowledgePlex, Inc., by Troy Anderson
**Date:** December 13, 2007

*KnowledgePlex, Inc. v. Placebase, Inc. a/k/a Metonymy, Inc.*, D.D.C. 1:07-CV-02315-RMU

# EXHIBIT B

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

TXu 1-578-402

**Effective date of registration:**

May 8, 2008

## Title
**Title of Work:** DataPlace

## Completion/ Publication
**Year of Completion:** 2007

## Author
- **Author:** Fannie Mae Foundation
  **Author Created:** computer program

  **Work made for hire:** Yes
  **Citizen of:** United States      **Domiciled in:** United States

## Copyright claimant
**Copyright Claimant:** KnowledgePlex, Inc.
560 S. Winchester Blvd., Suite 500, San Jose, CA, 95128

**Transfer Statement:** Assignment of all rights

## Limitation of copyright claim
**Material excluded from this claim:** Excluding first 25 pages of source code
**Previous registration and year:** TXu 1-570-162   2007
**New material included in claim:** All other computer program code

## Rights and Permissions
**Organization Name:** KnowledgePlex, Inc.
**Name:** To whom it may concern
**Address:** 560 S. Winchester Blvd.
Suite 500
San Jose, CA 95128

## Certification

**Name:** KnowledgePlex, Inc. by Troy Anderson

**Date:** May 8, 2008

---

**Correspondence:** Yes