UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| KNOWLEDGEPLEX, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-2315 (RMU) |
| | : | | |
| v. | : | Document No.: | 8 |
| | : | | |
| METONYMY, INC. D/B/A PLACEBASE, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANT'S MOTION TO DISMISS

### I.  INTRODUCTION

The plaintiff brings claims for breach of contract, copyright infringement and trade secret misappropriation. In response, the defendant seeks to dismiss the complaint on the grounds (1) that the court lacks personal jurisdiction over the defendant; (2) that the District of Columbia ("D.C." or "the District") is an improper venue; (3) that the plaintiff fails to join an indispensable party; (4) that the court lacks subject-matter jurisdiction over the copyright claim; and (5) that the plaintiff fails to state a claim. Because the defendant does not have sufficient minimum contacts with the District and because the defendant has not consented to being haled into this court, the court lacks personal jurisdiction over the defendant and grants the defendant's motion to dismiss. As this ruling is dispositive, the court need not reach the defendant's request to dismiss the complaint on other grounds.[1]

---

[1] On August 13, 2008, the plaintiff amended the copyright infringement claim in the complaint to clarify that it has attempted to cure a defect in its copyright registration. Am. Compl. As this change does not affect the court's determination that it lacks personal jurisdiction over the defendant, the court need not reach the issue of whether the plaintiff now possesses a valid copyright infringement claim.

## II.   BACKGROUND

### A.   Factual History

The plaintiff corporation was launched in 2000 as an initiative by the Fannie Mae Foundation to support the work of practitioners, grantors, policy makers, scholars, investors, and others involved in the affordable housing and community development fields. Compl. ¶ 5. In 2004, in an effort to create a web-based data system that would provide housing and demographic data to the public, the plaintiff issued a request for proposals, seeking input on developing a new technology platform for this purpose. *Id.* ¶ 7. The plaintiff eventually accepted a proposal by Vinq, L.L.C. ("Vinq") and its subcontractor, the defendant, to develop the system called "DataPlace." *Id.* ¶ 13; Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 2.

Fannie Mae Foundation on behalf of the plaintiff executed a contract ("the prime contract") with Vinq, and Vinq subsequently executed a subcontract ("the subcontract") with the defendant. Pl.'s Opp'n at 2. Under the terms of the prime contract, Vinq and the defendant agreed that the plaintiff would own all work produced as part of the project, that all rights in the resulting work would be assigned to the plaintiff, and that the defendant had no license to use intellectual property developed as part of the project. Compl. ¶ 16. The subcontract incorporated the prime contract "when available and only to the extent applicable." Pl.'s Opp'n at 6 & Ex. 1 ("Subcontract") ¶ 21.

The prime contract identified the District as the governing law and venue for all disputes or controversies arising out of or in connection with the agreement. *Id.*, Ex. A(1) ("Prime Contract"). The subcontract, which binds the defendant to all "applicable provisions" of the prime contract, includes a conflicting forum selection clause requiring all actions relating to the

defendant's work to be brought in Santa Clara County, California.  Subcontract ¶ 21.  At the time of contract formation, the plaintiff was located in the District of Columbia, but it subsequently relocated to Maryland in August 2007, and then to California in November 2007, where it is currently located.  Pl.'s Opp'n at 6.

Between May 1, 2007 and August 13, 2007, the parties attempted to negotiate an agreement to govern the future development of DataPlace, outside of the Vinq contracts, but the attempt was unsuccessful.  Compl. ¶ 27.  When negotiations failed, the defendant allegedly refused to fulfill its obligations under the subcontract.  *Id.*  The defendant allegedly ceased all development work and failed to complete delivery of DataPlace.  *Id.* ¶ 28.  The plaintiff claims that the defendant began developing a product for itself called Pushpin and another product for a different client, both similar to DataPlace.  *Id.* ¶ 32.

### B. Procedural History

On December 21, 2007, on the basis that it is a third-party beneficiary to the subcontract, the plaintiff filed a complaint against the defendant alleging copyright infringement, breach of contract, common law trade secret misappropriation and trade secret misappropriation in violation of District of Columbia Code §§ 36-401.  Compl. ¶¶ 17, 38-56.  On February 25, 2008, the defendant moved to dismiss the case, arguing that the court lacks personal jurisdiction and subject-matter jurisdiction, that D.C. is an improper venue, that the plaintiff fails to join an indispensable party, and that the plaintiff fails to state a claim for which relief can be granted.  The court turns now to resolve these matters.

### III. ANALYSIS

#### A. The Court Grants the Defendant's Motion to Dismiss

The defendant raises five distinct arguments in support of its motion to dismiss the complaint. First, the defendant claims that the court lacks personal jurisdiction over it. Def.'s Mot. at 8. Second, the defendant argues that venue is improper in this district pursuant to 28 U.S.C. § 1391(b) and the agreement of the parties. *Id.* at 9. Third, the defendant argues that the court should dismiss the complaint for failure to join an indispensable party under Federal Rule of Civil Procedure 19. *Id.* at 11. Fourth, the defendant argues that this court lacks subject-matter jurisdiction over the copyright infringement claim. *Id.* at 14-15. Finally, the defendant claims that the court should dismiss the plaintiff's trade secret misappropriation claims for failure to state a claim upon which relief can be granted. *Id.* at 20. The court agrees that it lacks personal jurisdiction over the defendant and, therefore, grants the defendant's motion to dismiss on this basis. Lacking jurisdiction over the case, the court declines to address the other grounds in the defendant's motion.

#### B. Legal Standard for Personal Jurisdiction Over a Non-Resident

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

First, a plaintiff must show that the personal jurisdiction may be grounded in one of the several bases provided by the District of Columbia's long-arm statute. D.C. CODE § 13-423

(2001); *GTE New Media Servs.*, 199 F.3d at 1347. That statute provides, *inter alia*, that personal jurisdiction exists over any person as to a claim for relief arising from the person's

> (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. CODE § 13-423(a). Subsection (b) qualifies the reach of the statute by noting that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* § 13-423(b).

Second, the Due Process Clause of the Fifth Amendment to the U.S. Constitution requires the plaintiff to demonstrate "'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1988). In short, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

### C.    The Court Lacks Personal Jurisdiction Over the Defendant

The defendant asserts that the plaintiff has failed to allege specific facts connecting it to the District. Def.'s Mot. at 8. Specifically, the defendant points out that the complaint does not allege that it is located in, or carries on a consistent pattern of business activity in the District such that it should be subject to general jurisdiction.[2] *Id.* Likewise, the defendant asserts that the plaintiff has not sufficiently established that its claims arise from acts enumerated in the District's long-arm statute, D.C. CODE § 13-423, such that specific jurisdiction would apply, *id.* at 9.

The plaintiff argues that the court has specific jurisdiction under the D.C. Long-Arm Statute, D.C. CODE § 13-423, which permits personal jurisdiction over a defendant "transacting any business in the District of Columbia," or "contracting to supply services in the District of Columbia." Pl.'s Opp'n at 8; D.C. CODE § 13-423(a)(1)-(2). In support of its claim that the defendant "transacted business" in the District sufficient to warrant exercising specific jurisdiction pursuant to D.C. Code § 13-423(a)(1), the plaintiff argues that the defendant contracted to provide services in D.C. when it entered into the subcontract. *Id.* For this premise, the plaintiff relies on the fact that the Fannie Mae Foundation[3] entered into the prime contract on behalf of the plaintiff, its location is identified in the prime contract as D.C., and the prime

---

[2]    The defendant is not located in the District of Columbia, Compl. ¶ 2, and there is no basis for the court to exercise general jurisdiction. Moreover, in its opposition, the plaintiff does not dispute that there is no general jurisdiction over the defendant. *See generally* Pl.'s Opp'n. Because the plaintiff does not dispute that its complaint failed to allege a basis for general jurisdiction, the court deems it conceded. *Fox v. Am. Airlines, Inc.,* 2003 WL 21854800, at * 2 (D.D.C. Aug. 5, 2003) (ruling that "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded"), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004).

[3]    The Fannie Mae Foundation allegedly assigned the plaintiff "rights in the DataPlace project" and "transferred and assigned its rights, title and interest in and of each asset of the KnowledgePlex unit," to the plaintiff. Pl.'s Opp'n at 4, 7.

contract is incorporated into the subcontract. *Id*. To the plaintiff, the defendant's alleged breach of the subcontract is a failure "to provide services in the District of Columbia, namely, assisting in the development of DataPlace." *Id*. The court cannot agree with the plaintiff.

It is true that "[w]hen a non-resident has solicited the business relationship and the contract calls for the performance of work within the District, the court may find that the transaction has such a substantial connection with the District such that the exercise of personal jurisdiction is permissible." *Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 4-5 (D.D.C. 1996). Relevant considerations include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealings." *Burger King*, 471 U.S. at 476 - 481. Here, however, the plaintiff, who bears the burden of proof, has not demonstrated that the defendant "solicited the business relationship" or that "the contract calls for the performance of work within the District." *Id*. The plaintiff ambiguously states that "Vinq subsequently executed a subcontract with Placebase," but it offers no evidence that the defendant solicited the business relationship in the District. Pl.'s Opp'n at 2. Furthermore, the subcontract specifically requires that the defendant "shall perform work at [the defendant's] offices in California," Subcontract, Statement of Work at 4, and nothing in the record indicates other contact with D.C. or an intent to supply services in D.C. *See e.g. Schwartz.* at 6 (recognizing a defendant's connection to D.C. because the plaintiff had argued and provided correspondence between the parties demonstrating an ongoing relationship between the parties, including the defendant giving the plaintiff directions regarding other business projects that the defendant intended to pursue, and argued that the contract would have been at least partly performed within D.C.).

In addition to failing to show that the first two prongs of the long-arm statute are satisfied, the plaintiff fails to show that the constitutional requirements for personal jurisdiction have been met. The Supreme Court requires that the defendant have "minimum contacts" with the forum so as not to "offend traditional notions of fair play and substantial justice" and to satisfy due process. *GTE New Media Servs.*, 199 F.3d at 1347 (citations omitted). But, the plaintiff identifies no contacts the defendant has had with the District of Columbia other than its blanket conclusion that the defendant "transacted business" in D.C. *See generally* Pl.'s Opp'n. Absent any demonstrated contacts with this forum, the plaintiff has failed to show that the defendant purposefully availed itself of this court's jurisdiction and that it could reasonably anticipate being haled into this court. *Asahi Metal Idus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987); *GTE New Media Servs.*, 199 F.3d at 1347. Based on the foregoing reasons, the court concludes that the plaintiff has failed to establish this court's personal jurisdiction over the non-resident defendant, and therefore, the court should dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), unless the defendant otherwise consented to jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) (stating that personal jurisdiction is a waivable right and that a party may "stipulate in advance to submit their controversies for resolution within a particular jurisdiction").

### D. The Defendant Did Not Consent to Personal Jurisdiction

The court turns now to the plaintiff's chief argument that the defendant consented to the jurisdiction of this court. The plaintiff claims that the prime contract, between it and Vinq, including the forum-selection clause contained therein, should apply equally to the defendant because the prime contract was incorporated into the subcontract between Vinq and the

defendant.  Pl.'s Opp'n at 7.  The defendant argues to the contrary that there was no agreement by the parties providing for venue in the District of Columbia.  Def.'s Mot. at 9.  Further, the defendant insists that it is only bound by the provisions of the prime contract that do not conflict with the subcontract.  *Id.* at 14.

The prime contract and the subcontract plainly conflict as to the forum selection clause.  The prime contract specifically states that D.C. is the only forum for resolving disputes arising out of the contract, and the subcontract's forum-selection clause requires all actions relating to the defendant's work to be brought in Santa Clara County, California.  Subcontract ¶ 21.  But, the subcontract also incorporates the applicable provisions of the prime contract.  *Id.* ¶ 2.

The issue, then, is whether the forum-selection clause in the prime contract between the plaintiff and non-party Vinq is incorporated as "applicable" to the subcontract and enforceable against the defendant.  The plaintiff makes a bald assertion that the defendant and Vinq lacked the capacity to alter the choice of forum or to force the plaintiff to a different forum to resolve this dispute.  Pl.'s Opp'n at 8.  But, the subcontract states that

> "[t]his Agreement, the Prime Contract (when available and *only to the extent applicable*), the Statements of Work, Change Orders (if any), and the documents incorporated by reference in this writing constitute the entire agreement and understanding between the parties and supersede all prior agreements, whether oral or written, between the parties with respect to the subject matter of this Agreement."

Pl.'s Opp'n, Ex. 1 ¶ 21 (emphasis added).  Therefore, as the prime contract was incorporated into the subcontract only to the extent that it was applicable, and as the subcontract contains its own forum selection clause, the forum selection clause in the prime contract cannot be applicable to the subcontract.  *Johnson v. Basic Constr. Co.*, 429 F.2d 764, 772 (D.C. Cir. 1970) (holding that

provisions in a subcontract incorporating a prime contract for a limited purpose are limited only to those that are applicable).

The plaintiff's reliance on *Manganaro Corp. v. Jefferson at Penn Quarter* for enforcement of the prime contract against the defendant is misplaced. First, the *Manganaro* court was not confronted with directly conflicting forum provisions. 2005 WL 323979 (D.D.C. Aug. 9, 2005) (explaining that "[b]oth the Prime Contract and the Subcontract contemplate venue lying in the Eastern District of Virginia," applying the terms of the contract requiring that the two contracts "supplement and complement" each other, and transferring the case to that district). To the contrary, the two contracts in the case at bar contain conflicting and mutually-exclusive provisions. Second, the subcontract in that case "stat[ed] clearly that 'Subcontractor shall be bound by all the terms of the [Prime] Contract . . . and all such terms, obligations and provisions of the [Prime] Contract are hereby inserted and incorporated into this subcontract as fully as though copied herein." *Id*. Here again, the instant case stands in contrast as the subcontract only incorporates the "applicable provisions" of the prime contract. Subcontract ¶ 21.

The *Manganaro* court states that "[w]hat matters is that [the subcontractor] intended, at the time the Subcontract was entered into, to be bound by all the terms of the Prime Contract, including its forum selection clause." 2005 WL 3273979, at *3. To determine the parties' intentions, the court looks to the language used by the parties to express their agreement, and it is well established that the plain and unambiguous meaning of an instrument is controlling. *United States v. Baroid Corp.*, 346 F. Supp. 2d 138, 142-43 (D.D.C. 2004) (citing *WMATA v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C. Cir. 1980)); *Lucas v. U.S. Army Corps of Eng'rs*, 789 F. Supp. 14, 16 (D.D.C. 1992) (stating that "[i]ntent is construed by an objective standard

and evidenced from the words of the contract itself"); *see also Quadros & Assocs., P.C. v. City of Hampton*, 597 S.E.2d 90, 93 (Va. 2004) (explaining that "the guiding light . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares") (internal citations omitted). A plain reading of the subcontract indicates that the defendant intended to be bound by the forum-selection clause in the subcontract, requiring all claims relating to the contract to be brought in California. *See e.g. Info. Res. Group, Inc. v. Tier Tech., Inc.*, 2008 WL 80057, at *2 (W.D. Mo. Jan. 7, 2008) (concluding that because the subcontract contained a forum selection clause that conflicted with the forum selection clause contained in the statement of work, conflicts arising under each separate document would be governed by the clause contained therein, so as to interpret each by its plain terms and to give effect to the mutual intent of the parties). Additionally, the court must conclude that the subcontract does not incorporate the conflicting forum selection clause of the prime contract, because, again upon plain reading, a conflicting clause in an incorporated document cannot be deemed to be "applicable." *Manganaro Corp.*, 2005 WL 3273979, at *2 (explaining general contract law interpretation requiring that "the plain and unambiguous meaning of an instrument is controlling" and a court must determine "the intentions of the parties from the language used by the parties to express their agreement") (citing cases); *see also Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 747 (2005) (elaborating that [t]he plain meaning of a contract term is 'the meaning derived from the contract by a reasonably intelligent person acquainted with the contemporary circumstances'") (citing *Firestone Tire & Rubber Co. v. United States*, 195 Ct. Cl. 21 (1971)).

The court accordingly concludes that the defendant did not consent to being haled into this court. To conclude otherwise would be to expressly invalidate the defendant and Vinq's bargained-for forum selection clause as contained in the subcontract. *See Servewell Plumbing, L.L.C. v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (explaining that "[o]nly 'some compelling and countervailing reason' will excuse enforcement of a bargained-for forum selection clause"). The court declines to engage in this type of contract interpretation gymnastics. Because the plaintiff has failed to persuade the court that the defendant consented to personal jurisdiction in this court, the court grants the defendant's motion to dismiss.

## IV.   CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 5th day of September, 2008. The court will rule separately on the defendant's motion for sanctions.

                                                RICARDO M. URBINA
                                                United States District Judge